STATE OF MISSISSIPPI *v*. THOMAS EDWARDS.

HIGHWAYS.    *Working by contract.    Laws 1900, p. 153.    Failure to work or
pay tax.    Misdemeanor.    Criminal law.*

> In order to make the law of 1900, p. 153, providing for working of
> highways by contract effective in a county, so as to render a delin-
> quent road hand or taxpayer liable to punishment under sec. 7
> of the law, making it a misdemeanor for one liable to fail to work
> on the roads or pay the road tax required, the law must not only
> be adopted by the board of supervisors of the county, but the
> board should, in addition, comply with the essential provisions of
> the law, and, among other requirements, should:
>
> (a) Divide the roads into convenient links; and,
> (b) Let out the working of the roads upon a competitive bidding; and,
> (c) Require of the contractor a bond in a sum double the amount of
>     his bid; and,
> (d) Cause a list of delinquents to be made, dealt with and placed on
>     the personal assessment roll, as required by the law.

FROM the circuit court of, first district, Yalobusha county..
HON. SAMUEL C. COOK, Judge.

Edwards, the appellee, was convicted before a justice of the peace of a misdemeanor, under sec. 7, Laws 1900, p. 153, because of his failure to work on the public roads or pay a road tax. He appealed to the circuit court and was there acquitted, and the state appealed to the supreme court.

At its June, 1901, meeting, the board of supervisors of Yalobusha county took steps to put the act of March 12, 1900 (Laws 1900, p. 153), in operation in said county from and after August 1st following. At this meeting the board divided the county into five road districts, and declared what territory in the county should compose each district. It also divided the public roads into first-class and second-class roads, naming those put into the first-class, and designating all other public roads as second-class. It also ordered the clerk to advertise . for sealed bids for contracts, and the assessor was directed to make a list of all persons liable to road duty. At its July, 1901, meeting, all bids for contracts were rejected, and the clerk ordered to re-advertise. At the August meeting the board again rejected the bids, but proceeded to let the several districts to parties appearing and agreeing to take same, and the parties making the contracts were ordered to make bonds, in the penalty of $1,000, not double the sum of their bids, with surety companies as sureties. At the September meeting the board levied a road tax and a commutation tax of $3 on each person subject to road. duty, and the sheriff was ordered to collect this tax, and keep a separate account with the list, and report to the board. At the October meeting the assessor was ordered to complete the assessment of road hands in the county at once, and to file the list. Edwards, appellee, failed to work the road or to pay the commutation tax, and an affidavit was made against him in a justice of the peace court, where he was convicted and fined. He appealed to the circuit court, where a jury was waived, and the case tried before the judge. The minutes of the board of supervisors were introduced in evidence showing the foregoing facts. A book

purporting to be the assessment of persons liable for road tax of $3 for 1901 in the county, made out by the assessor, and by him turned over to the board of supervisors, was also introduced. Neither this book nor the list of road assessments were ever copied on the personal assessment rolls. The circuit court found the following: That the contract entered into by the board of supervisors and the road contractor was void, because it was made without previous advertisement for bids, and because no bond was executed by the contractor; that the board of supervisors did not divide the roads of the county into convenient links; that the contractor did not report, on or before September 1st of the year, to the board of supervisors, the names of those who had worked out their time under him, nor did the board make any such report to the sheriff; that the assessor did not provide lists upon which were assessed all persons in his county subject to the commutation tax for road purposes, and that no such list was copied upon the personal assessment rolls of the county, ruled and provided for such lists, and the sheriff had no warrant for the collection of this tax from defendant, and that defendant was not, for this reason, in default.

*I. T. Blount*, for appellant.

Aside from the general jurisdiction over roads, ferries and bridges, conferred on the board of supervisors by our state constitution (sec. 170), that instrument further provides (sec. 85) that " the legislature shall, by a general law, provide for the working of public roads by contract, and such law may be put in operation only by a vote of the board of supervisors in those counties where it may be desirable."

The legislature passed the law. (See Acts 1900, p. 153.) The board of supervisors of Yalobusha county, at the June, 1901, meeting, put this law in operation by a vote regularly entered on their minutes. This action of the board made every male person in the county, between the ages of eighteen

and fifty, liable to eight days' special road service, unless exempt for special reasons. (Sec. 6, Laws 1900, p. 154.) This special service could be commuted by the payment of a $3 annual road tax. (Sec. 7, Laws 1900.) A neglect or refusal to pay was a misdemeanor. *Ib.*

The action taken by the board of supervisors was all that was necessary to put the law in force, and the road contract law of 1900 took effect in the county from the date of the entry of this declaration on their minutes at the June meeting, 1901. The letting of the contract, the making of the assessment lists by the assessor, the execution of bond by the contractor, and other details, were matters with which the board were to deal later, but these did not affect the status of the county with reference to the law of 1900, as declared in the order, nor of the road workers, or taxpayers, or in any way affect the levy and collection of taxes for the purpose of carrying out the working of public roads.

*B. H. Golladay*, for appellee.

The board of supervisors, at its June session, took the initiative step to put the road law of 1900 in force, but it failed to do several things which it is required by law to do before the statute became effective.

1. It failed to divide the roads into convenient links.

2. It rejected all bids, made in pursuance of advertisement, and then (without advertisement, of course) made a contract with one Harris. This the board was unauthorized to do.

3. Harris was never required to give a bond in a penalty double the amount of his bid. He was ordered to give a bond in the penalty of $1,000, to be approved by the president of the board, not by the board itself. Why the penalty of $1,000 was fixed, rather than any other sum, is beyond finding out. This bond even was not given until long after Edwards was in default, if he ever became a delinquent.

4. No list of delinquents was ever made or dealt with, as

required by law, and none was ever placed on the personal assessment roll.

The following authorities are pertinent : *Howe* v. *State,* 53 Miss., 70 ; *State* v. *Vice,* 71 Miss., 912 ; *Shelby* v. *Alcorn,* 36 Miss., 288 ; *Swann* v. *Buck,* 40 Miss., 301 ; *Bridgers* v. *Supervisors,* 58 Miss., 815 ; *Beck* v. *Allen, Ib.,* 159 ; Meach. on Pub. Officers, secs. 2, 5, 324 ; *Dixon* v. *Greene County,* 76 Miss., 809 ; *Jefferson County* v. *Grafton,* 74 Miss., 435 ; *Seal* v. *Donnelly,* 60 Miss., 658 ; *Paxton* v. *Baum,* 59 Miss., 531 ; *Board* v. *Arrighi,* 54 Miss., 668.

Argued orally by *I. T. Blount,* for appellant.

WHITFIELD, C. J., delivered the opinion of the court.

The adoption, by resolution, of the board of supervisors of the act of March 12, 1900 (Laws 1900, p. 153), merely declared that the county chose to come under that law. It was still necessary, in order that its provisions should be legally effectual and practically operative, that its essential provisions should be complied with. Among the provisions that are essential to the practical operation of the law are that the roads shall be divided into convenient links ; that the working of the roads shall be let out upon a competitive bidding ; that the bond of the contractor shall be in double the amount of the bid ; that a list of the delinquents should be made, and dealt with as the act requires, and placed on the personal assessment roll, since otherwise there would be no legal charge against the delinquent ; and these provisions are material and vital. The act is adopted in Yalobusha county—that is, the county has chosen to come under the operation of the act. But action is necessary by the board in conformity with the provisions of the act, in order that the act may be practically administered. Every one of the provisions we have above set forth as vital to the legal operation of the act was flagrantly violated by the board of supervisors. The law has been adopted for the county, but it

remains for the board to put it into effect by conforming to the essential provisions of the act. The result in the court below was correct in so far as the acquittal of the defendant was concerned, and, further, in so far as that action harmonizes with what we herein announce.